**EXHIBIT A**



COPY

DEC 0 6 2017

MICHAEL K. JEANES, CLERK
G. RAMIREZ
DEPUTY CLERK

Drew M. Gully, Bar #20475
Ryan J. Linder, Bar #19871
LINDER & GULLY PLC
60 East Rio Salado Parkway, Suite 900
Tempe, Arizona 85281
Telephone: (602) 277-7123
Fax: (602) 532-7675
dgully@lindergully.com
Attorneys for Plaintiffs Heather and William House

## SUPERIOR COURT OF THE STATE OF ARIZONA

## COUNTY OF MARICOPA

| | |
|---|---|
| HEATHER HOUSE and WILLIAM HOUSE, wife and husband,<br><br>Plaintiff,<br><br>v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION GENERAL INDEMNITY COMPANY, a Texas Corporation, JOHN and JANE DOES I-X; BLACK and WHITE CORPORATIONS/PARTNERSHIPS I-X,<br><br>Defendants. | NO. CV2017-014627<br><br>**COMPLAINT**<br><br>(Breach of Contract; Tort Non-Motor Vehicle – Breach of the Covenant of Good Faith and Fair Dealing) |

Plaintiffs, Heather and William House, by and through undersigned counsel, hereby submit their Complaint against Defendants, and each of them, as follows:

**JURISDICTION AND VENUE**

1.  This Court has jurisdiction, and venue is appropriate, because the Defendant is a corporation doing business in Maricopa County, Arizona, and caused events to occur in Maricopa County, Arizona, giving rise to the allegations in this Complaint. The amount claimed in this Complaint exceeds this Court's minimum jurisdictional limitation.

2. At all times material hereto, Defendant United Services Automobile Association General Indemnity Company (hereinafter "USAA") was a Texas Corporation licensed to and doing business in Maricopa County, Arizona.

3. At all material times, Plaintiffs were residents of Maricopa County, Arizona.

4. The incident giving rise to Plaintiffs' original claims (as further set forth below) took place in Maricopa County, Arizona on June 19, 2104.

5. The USAA Policy (as further defined below) at issue was formed in Maricopa County, Arizona.

6. Defendants John and Jane Does I-X and Black and White Corporations/Partnerships I-X are and, at all times mentioned, were persons, agents, servants, employees, corporations and/or business entities whose true names and identities are not known to Plaintiff at the present time. Plaintiff alleges, upon information and belief, that John and Jane Does I-X are citizens and/or residents of Maricopa County, Arizona, and that Black and White Corporations I-X were corporate entities conducting business within Maricopa County, Arizona. At the present time, Plaintiff does not have the true names of John and Jane Does I-X and Black and White Corporations/ Partnerships I-X. However, at such time as any of these true names are ascertained, Plaintiff will seek leave of this Court to amend Plaintiff's Complaint to reflect the true identities of these individuals and/or entities, together with the appropriate charging allegations.

7. This Complaint has been timely brought.

## GENERAL ALLEGATIONS

8. During all applicable times, USAA had an active automobile liability insurance policy (Policy Number: 02726-43-08G-7101-1) hereinafter referred to as "the

Policy") issued to William and Heather House for vehicles including a 2000 Nissan Frontier (VIN 1N6DD26S2YC326402), hereinafter referred to as "the Insured Vehicle". The Policy contained Underinsured Motorist Coverage with limits of $300,000 per person and up to $500,000 per occurrence.

9. Heather and William House were, at all times relevant hereto, residents of Maricopa County, and the Insured Vehicle was principally located in Maricopa County.

10. On or about June 19, 2014, while the Policy was in effect on the Insured Vehicle, Plaintiff Heather House was operating the Insured Vehicle.

11. Specificity, at approximately 5:30 p.m. on June 19, 2014, Heather House was traveling northbound on the Loop 101 Freeway in Tempe, Arizona on her way to work.

12. As Heather House passed the Warner Road exit, she safely slowed with traffic before coming to a complete stop with ample space between her vehicle and the vehicle in front of her.

13. Suddenly, after a quick glance in her rearview mirror, Heather House felt a catastrophic impact to the rear of her vehicle. The impact was so severe that it launched Heather's vehicle forward slamming her into the rear of the vehicle in front of her and causing both of her airbags to immediately deploy.

14. DPS Officer Brown opined that Cyndl Hughes, was travelling approximately 45 miles per hour when she slammed into the rear of Plaintiff's stopped vehicle.

15. Heather House was thrown about in the driver's seat area of her vehicle, her head striking the headrest, her right ankle striking the interior of the vehicle, her face "punched" by the airbag and her left arm burned from the airbag's deployment.

3

16. Immediately following the accident, Cyndl Hughes the driver who violently collided with Heather House told her "she was sorry" for hitting her and that she was "unable to stop in time". Her vehicle, as well as Cyndl Hughes', was towed from the scene as they were both too damaged to drive.

17. At the time of the collision described herein, Cyndl Hughes had automobile liability insurance through The Hartford with a policy limit of $100,000 per person per collision.

18. Given the policy limit available under Cyndl Hughes' insurance policies, and in consideration of Heather House's substantial injuries and damages, demand for payment of this policy limit was made in November of 2016. On August 10th, 2017 Cyndl Hughes's liability insurer (The Hartford) paid its policy limit of $100,000.00 in order to protect its insured.

19. Prior to settlement with Cyndl Hughes for her policy limit of $100,000, Heather House informed USAA of her impending underinsured motorist claim on or around June 1, 2017. At this time, undersigned counsel requested: a) the UIM coverage limits in effect on the date of this loss, b) any recorded statements of Mrs. House or Ms. Hughes, and c) any property claim documentation (photos, invoices, estimates, etc.) in USAA's possession. No property claim documentation has been provided.

20. On or around June 19, 2017, a copy of Plaintiff's First Supplemental Disclosure Statement providing a breakdown of Heather House's injuries, damages and future medical care was provided to USAA. The past medical, wage loss and future care damages totaled $298,162.82. Once again, undersigned counsel requested: a) the UIM coverage limits in effect on the date of this loss, b) any recorded statements of Mrs. House or Ms. Hughes, and c) any property claim documentation (photos, invoices, estimates, etc.) in USAA's possession. No property claim documentation has been provided.

21. In addition, on or around June 19, 2017, a demand for Heather House's underinsured motorist policy limit of $300,000.00 was made.

22. On or around August 30, 2017 undersigned counsel notified USAA the underlying claim against Cyndl Hughes had been settled for her policy limit of $100,000.00. In addition, copies of all relevant medical records and bills for injuries stemming from the incident were provided to USAA.

23. On or about September 12, 2017, USAA wrote demanding "proof" of Cyndl Hughes' available insurance limit and payment of the applicable limit. They also demanded three years medical records from "all" medical providers with no limitation, a clear violation and intrusion of Heather House's privacy and in no way relevant to her UIM claim.

24. On or about September 14, 2017, undersigned counsel provided the requested "proof" of the underlying insurance limits and objected to the overreaching medical authorizations demanded by USAA. Once again, a demand for Heather House's underinsured motorist policy limit was made.

25. On or about September 20, 2017, USAA's adjuster, Rachelle Lacy, left a voicemail message and sent confirming correspondence offering $3,000.00 in "new money" despite special damages totaling $298,162.82.

26. On or about October 20th, 2017, undersigned rejected USAA's $3,000.00 offer and once again presented USAA with an overview of its insureds' claim. In an effort to give USAA every opportunity to comply with its obligations to Heather House under the Policy, we provided the opinions of three treating neurologists who all opined the source of her headaches was the subject collision. The future care required o treat the headaches and the cost of such care was also provided. Once again, the underinsured policy limit of $300,000.00 was demanded from USAA.

27. In this same October 20, 2017 correspondence, undersigned requested in writing, a) how USAA reached their figure and b) what investigation, including all neurological opinions it relied upon to reach its evaluation. This request was made to give USAA every attempt to provide the basis it relied upon when making its evaluation regarding Heather House's claim. None of the requested items was provided by USAA.

28. On or about October 24, 2017, Rachelle Lacy left a voicemail stating that "I'm not going to be including any futures on this evaluation and that is why my offer is so low for new money." She continued to state: "I'm not going to be accepting any futures." No basis was provided for this unreasonable and arbitrary position. Ms. Lacy then increased USAA's offer to $4,000.00 stating Heather House "is not out of pocket any money" apparently ignoring the $265,880 of future care her neurologist, Dr. Fern Arlen, has opined she will require over the remainder of her life.

29. On or about November 2, 2017, Rachelle Lacy left a voicemail stating "I will not be paying any of those future meds" stating USAA "just don't have the justification showing that these migraines are related to this accident. I understand you have a neurologist and two other physicians saying that it is related to this (the subject accident) but..." USAA's offer still stood at $4,000.00.

30. As such, USAA has failed to wholly compensate Plaintiffs by way of their underinsured motorist claim relating to the covered collision described above.

31. Other than as described herein, USAA has refused to provide any additional detail as to the basis of its denial of Plaintiffs' claim despite requests to do so.

## COUNT ONE
### (Breach of Contract)

32. Plaintiffs reallege the allegations contained above, and incorporate the same by reference as though set forth fully herein.

6

33. Pursuant to the terms of USAA's Policy at the time of the collision described herein, Heather and William House were insureds under the subject policy language and definitions.

34. Pursuant to the Policy's underinsured motorist coverage, and in exchange for insurance premiums USAA had already been paid, USAA promised to pay for compensatory bodily injury damages to which insureds were entitled from the owner/operator of an underinsured motor vehicle. Despite this coverage, USAA has refused to pay Plaintiffs such compensatory bodily injury damages.

35. Heather House's bodily injuries were caused by the collision described herein, Cyndl Hughes was liable to Heather House for said bodily injuries as a result of her negligent operation of her motor vehicle. Cyndl Hughes' bodily injury liability insurance limit was insufficient to cover Heather House's damages, and all insurance limits of the underlying Hartford Policy have been fully paid/exhausted in settlement of Heather House's claims.

36. None of the exclusions contained in the Policy's underinsured motorist endorsement apply to Heather Houses' claims asserted to USAA as described herein.

37. Pursuant to the express provisions of the USAA Policy, and based upon clear evidence described herein, Heather House was, and continues to be, entitled to payment of the full $300,000.00 underinsured policy limit of the Policy.

38. USAA has not only refused to pay Heather House the applicable policy limit, but has refused to make any reasonable offer whatsoever to compensate Heather House for her claim.

39. USAA has further failed to conduct a reasonable investigation into the value and legitimacy of Heather House's claim.

7

40. As such, USAA failed to perform its duties and obligations under the terms of the Policy despite being paid and/or failed to perform its obligations in the fashion required under the terms of the Policy.

41. USAA breached the Policy, and has caused, and continues to cause, substantial damage to Plaintiff in the form of unpaid benefits to which Plaintiffs are clearly entitled.

42. This action arises out of a contract and, as a result, Plaintiffs are entitled to recover their reasonable attorneys' fees and costs incurred in this action pursuant to A.R.S. § 12-341.01 and/or the contract between the parties.

## COUNT TWO
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

43. Plaintiffs reallege the allegations contained above, and incorporates the same by reference as though set forth fully herein.

44. The duty of good faith and fair dealing is implied in every contract, including the USAA Policy. As such, USAA is required to give as much consideration to Heather House's interests (as an "insured" under the Policy) as it does to its own interests in all aspects of investigating and evaluating her claim.

45. Under Arizona law, USAA "has an obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim. It should do nothing that jeopardizes the insured's security under the policy. It should not force an insured to go through needless adversarial hoops to achieve its rights under the policy. <u>It cannot lowball claims</u> or delay claims hoping that the insured will settle for less. Equal consideration of the insured requires more than that." *Zilisch v. State Farm Mutual Automobile. Ins. Co.*, 196 Ariz. 234, 238, 995 P.2d 276, 280 (2000), Emphasis added.

46. As further set forth above, USAA intended to, and did in fact, delay Heather House's underinsured motorist demand without a reasonable basis under the circumstances.

47. As further set forth above, USAA intentionally failed to pay Heather House's underinsured motorist claim without a reasonable basis under the circumstances.

48. Having been given all of the relevant information surrounding Heather House's claim, USAA knew or reasonably should have known that it acted without a reasonable basis with respect to Heather House's claim.

49. Under the circumstances presented in Heather House's claim, USAA's obligation to pay Heather House the underinsured motorist policy limits was not fairly debatable – the full limits should have been paid.

50. USAA failed to conduct an adequate investigation into the claims presented by Heather House, and instead conducted an investigation solely focused upon denying Heather House the benefits to which she was entitled under the Policy. This is a breach of USAA's duty of good faith and fair dealings.

51. USAA failed to act reasonably in evaluating the claims presented by Heather House, and instead evaluated Heather House's claim with an unreasonabe and insupportably low value with the sole goal of denying Heather House the benefits to which she was entitled under the Policy. This is a breach of USAA's duty of good faith and fair dealings.

52. USAA failed to promptly pay Heather House's legitimate claim. This is a breach of USAA's duty of good faith and fair dealings.

53. In denying Heather House's legitimate claim, USAA has not only jeopardized her security under the Policy, but has eviscerated it. This is a breach of USAA's duty of good faith and fair dealings.

54. In denying Heather House's legitimate claim, USAA has forced Heather House to go through needless adversarial hoops to achieve her rights under the Policy. This is a breach of USAA's duty of good faith and fair dealings.

55. In denying Heather House's legitimate claim, USAA has denied and delayed payment of her claim with the hope that Heather House would settle for less or just go away. This is an egregious breach of USAA's obligation to treat its insured's interests with equal consideration, and is a breach of USAA's duty of good faith and fair dealings.

56. As a direct and proximate result of USAA's breach of its covenant of good faith and fair dealings, Heather House has been substantially damaged in the form of the unpaid benefits to which she is entitled under the Policy, economic losses in the form of loss of use of the sums that USAA rightfully should have paid on this claim, as well as emotional distress, humiliation, inconvenience, and anxiety experienced, and reasonably probable to be experienced in the future.

57. USAA, by and through its agents and employees, has acted with an evil mind and/or a reckless disregard for the rights of Heather House. As such, punitive damages are appropriate in this matter.

58. Plaintiffs hereby invoke their right to a trial by jury for all triable issues in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against USAA for the following sums:

A. For a compensatory damages relating to USAA's breach of the Policy in the amount of Plaintiffs' full damages, or in the alternative, such compensatory damages as the Court or a jury find appropriate;

B. For compensatory damages relating to USAA's breach of the covenant of good faith and fair dealings as the Court or a jury find appropriate;

C. For attorneys' fees incurred in prosecuting this action;

D. For costs incurred herein;

E. For interest on the foregoing liquidated damages at the rate of ten (10%) percent per year from the date paid through the date of judgment;

F. For interest on the foregoing at the maximum allowable rate from the date of judgment, until paid in full;

G. For punitive damages;

H. For such other relief as may be proper and just under the circumstances.

DATED this 6th day of December, 2017.

LINDER & GULLY, P.L.C.

BY /s/ *signature*
Drew M. Gully
Ryan J. Linder
60 East Rio Salado Parkway, Suite 900
Tempe, Arizona 85281
*Attorneys for Plaintiffs*

**EXHIBIT B**

**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Nathan D. Meyer (020583)
ndm@jaburgwilk.com
Micalann C. Pepe (029053)
mcp@jaburgwilk.com

Attorney for Defendant USAA GIC

## SUPERIOR COURT OF ARIZONA

## COUNTY OF MARICOPA

| | |
|---|---|
| HEATHER HOUSE and WILLIAM HOUSE, wife and husband,<br><br>Plaintiff,<br><br>v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION GENERAL INDEMNITY COMPANY, a Texas corporation, JOHN and JANE DOES I-X; BLACK and WHITE CORPORATIONS/PARTNERSHIPS I-X;<br><br>Defendants. | Case No. CV2017-014627<br><br>**NOTICE OF FILING NOTICE OF REMOVAL**<br><br>(Assigned to Honorable David Gass) |

Pursuant to 28 U.S.C. § 1441, *et seq.*, Defendant USAA General Indemnity Company ("USAA GIC"), incorrectly named as United Services Automobile Association General Indemnity Company, notifies the Superior Court that it has filed a Notice of Removal of this action to the United States District Court for the District of Arizona. *See* Exh. A, Notice of Removal (exhibits omitted).

17722-17722-00052\MCP\SLD\2953178.1

DATED this 11th day of January, 2018.

**Jaburg & Wilk, P.C.**

*s/ Micalann C. Pepe*
Nathan D. Meyer
Micalann C. Pepe
Attorneys for Defendant USAA GIC

**ORIGINAL E-FILED** and **COPY**
of the foregoing mailed this
11th day of January, 2018 to:

Drew M. Gully
Ryan J. Linder
LINDER & GULLY PLC
60 East Rio Salado Parkway, Suite 900
Tempe, AZ  85281
dgully@lindergully.com
rlinder@lindergully.com
*Attorneys for Plaintiff*

*/s/ Stephanie Dolfini*

2